Good morning, your honors. John Lemon for Kim Walker. Good morning. The question presented here is whether the government is relieved of its obligation to be truthful with the court when the defendant happens to be guilty. And because this court has consistently answered that question in the negative, Mr. Walker, who is serving a life sentence, is entitled to some form of relief. That's not the only issue. Prejudice needs to be shown based on what you believe was government misconduct. Where is the prejudice in this case? The pattern of prejudice is what Mr. Walker suffered. I'd like to compartmentalize. Do you want to duck the question or do you want to answer? No, I'm going to answer. I just want to compartmentalize the prejudice issue. As far as the specific ground of relief in the certificate of appealability with respect to the perjury at trial by Detective Ahmad, who disclaimed being part of the task force, when in fact two weeks later he submits a declaration in the same court in an unrelated civil case saying that he was a part of the task force. Well, no, he did not. The declaration does not say he was part of the task force. Does it? It comes pretty darn close. Okay, that's your characterization of it. Does the declaration say he was part of the task force? The declaration says he participated in the searches. It goes a little beyond that. What does he say? I'm looking for it. Because you won't find I was part of the task force in that declaration, will you? What he says, I apologize. We've all got it. Yeah. So, I mean, the reason I'm asked the question is I'm not sure you made even close to a case of perjury here. He testified in the first one that he participated in the searches. He said I wasn't part of the task force, but I worked on the case. So how is that inconsistent with his declaration? Well, what he said was, in the declaration, he said, during that same time period I was working on a federal wiretap investigation with DEA and various other police agencies, including FBI and LAPD. Okay, and what did he say in his testimony? His testimony, he said, you were also not a member of the DEA task force? Answer, I was never a member of the DEA task force. I was assigned to HIDTA at one point, just on a case specific, which is not this case, that would speak enough at this point. But he also testified about executing search warrants in this case, didn't he? I believe he did. But then the next question was, you were also not a member of the FBI task force? And he says, never been a member of the FBI task force. So where's the evidence that he was a member of the task force? I'm sorry, the next question was, did you participate in any of the wiretap investigation in this case? Not to my, I can't recall, no, sir. So if your Honor is asking me, did he specifically say, I wasn't part of the task force? Yeah, and you could have just said that at the beginning. But it comes pretty darn close. Okay, so we'll get back to Judge Zuhari's question. Let's assume that you had all this information at trial, that you knew he had a larger role in this. What difference would it make? He was called as a defense witness by a co-defendant. Well, and that's what I was trying to answer. I don't know why he was less than forthcoming at trial. I've tried to figure it out. I've spent hours trying to put this together. Well, let's assume he was forthcoming. Let's assume he was forthcoming at trial. How would it have made a difference as to your client's case? This is not structural error. And that's what I'm trying to say is, I don't know. I spent hours. We don't either, and that's the problem. Well, but I'm getting to the second part of this. But as far as specific prejudice from, let's just assume it's false testimony, I can't show specific prejudice at trial from the false testimony. I'm just being candid with the court. What I can show is a pattern of opacity. In everything that the government did in this case, they withheld material information at every step of the way. When they applied for the wiretap, when they withheld Discovery Rule 16 material in the district court, when they then misrepresented to this court, arguing waiver on the part of my client, based on arguments that he would have had to make based on the discovery that they withheld. So the argument – But their argument for waiver is not misconduct. It's a silly argument. I say that before your opponent stands up to make it so she knows my opinion about it. But it's not misconduct. At the very least, it was disingenuous, suggesting that it was – Disingenuity is not misconduct, on appeal at least. Even if that didn't rise to the level of misconduct, they were sanctioned in the district court for not turning over Rule 16 material, which would have been Brady material in the context of the wiretap litigation. So coming back to the prejudice, ultimately the prejudice that I can demonstrate is that this pattern of conduct on the part of the government resulted in my client never having a fair hearing to challenge the wiretap. And that's the only defense he had in this case. And the district court even noted that when the court was observing about the overwhelming evidence against Mr. Walker. The court said – and the wiretap evidence was the most compelling. So take me back to that. So let's assume that the detective, Mr. Romnick, had testified that I was involved in the wiretap investigation, which is what he said in his declaration. Run through me how that changes the result in the wiretap. Again, the trial testimony is simply part of a pattern under Chapman. What I'm saying is the failure of the agent Zapata to alert the district court to the pending investigations in Missouri and in Philadelphia, the existence of a key informant, Armando Mines, the fact they used a wiretap in Missouri, the fact that Kim Walker had been the primary target of the investigation for over a year, and that was withheld from all three wiretap affidavits, that would have been – the fact that that information was – Would have demonstrated that less means other than a wiretap were justified. Is that what you're – Yes, that would have been the argument that Mr. Walker would have made had he known that those facts existed. But then the government withheld that material from the defense until it was too late to challenge the wiretaps. I want to back up even further because you raised this issue of Mr. Mott's declaration in your motion for new trial, but you didn't include anything about this declaration in your direct appeal of Mr. Walker's conviction or in the denial of – or of the denial of that motion. So I'm just trying to figure out, based on this oversight, are your prosecutorial misconduct claims procedurally defaulted? It's not an oversight. I didn't know about it, and neither did my client. Mr. Walker discovered it when – Well, you raised it in the motion for new trial. No, I didn't. Well, somebody did, and it looks like you should know what the record is. My recollection is Mr. Walker filed some sort of pro se motion that his trial counsel attached to a pleading and submitted. I don't believe there was – I don't believe that – my recollection is there was no reference to that declaration, to Detective Ahmaud's declaration in that new trial motion. Okay. I don't think it's in there. The declaration occurred how long after the trial? I believe it was a couple of weeks after the trial, but it wasn't discovered. You discovered it when – because the record does – I'm not sure what the record indicates because it's all a pellet record. Right. So how would I figure out when you discovered it? Okay, so I believe it's September 12th, 2014. I could be a little bit off on the date, but it was a year after Mr. Walker's direct appeal was affirmed. And how do I find that in the record? I can find the record site for you, Your Honor. No, you don't have to give me the site. Just tell me in what kind of pleading was that in. It was in an unrelated civil case in District Court in Los Angeles. No, no, I'm sorry. This was in your 2255 filing, right? This was – my client filed that pro se, yes. Right, so that's when it was said I discovered the – He also submitted a declaration stating that he discovered it when he read Codefendant Foster's 2255. He didn't know about it until then. Yeah, I was trying to figure out where that was in the record. So you spent a lot of time in your brief with respect to this testimony by the agent and what you believe is a contradiction or perjury in the testimony. Yet we've already touched on the fact that the government didn't call this witness. Defendant did. The government didn't even mention this witness in closing argument or anywhere at the trial. So my difficulty is I don't see where the agents, given maybe the counsel for the government should have done a better job of disclosing information, but the trial judge at the outset of the trial said on the eve of trial, rather, excluded the Missouri investigation and mitigated or completely negated any harm from that. I'm still having trouble finding where the problem is. Today you seem to be arguing, unlike your brief, that it's a pattern of all this stuff. Your Honor, I'm arguing very much like my brief because I state explicitly in the brief that there is a pattern and that's the prejudice, and I can't show prejudice without the pattern. Okay, so now I understand, but I disagree with you. Your brief on page after page after page talks about the Missouri investigation and this witness's testimony. That seems to be the centerpiece of your argument in your written brief. The Missouri investigation and the government's lack of, the government's failure to produce the evidence related to the Missouri investigation is the centerpiece, but candidly, there's no direct connection between that and the trial testimony of Ahmaud. Thank you. Thank you very much. May it please the Court, Consuelo Woodhead on behalf of the United States. I believe counsel has made two concessions that are dispositive of this case. One, that he cannot show prejudice from Detective Ahmaud's testimony, and two, there is no direct connection between that testimony and the Missouri evidence. The simplest and most direct path to affirmance, which I think is the inevitable outcome in this case, is for the Court to do what it did in Zuno Arce and go straight to the question of the materiality of Detective Ahmaud's testimony and his declaration. I'm not clear, having reviewed this record, why the co-defendant called him. You're familiar with the record. Can you suggest to me why the co-defendant called him? I actually can't, Your Honor. His testimony appears to be irrelevant. It doesn't seem to have gotten the defendant anywhere. Impeaching it does not seem to be something that would have gotten the defendant anywhere. Was he a declarant or a witness in the wiretapping authorization part of this case? Absolutely not. No. Okay. It's very unclear why he was called at all, and it's equally unclear how impeaching him would have advanced the defendant's case. If you look at his testimony, the testimony is minor. It's peripheral. It's not even clear, as I think Your Honor pointed out, that the subsequent declaration is sufficiently different to constitute, quote, favorable evidence, because in the testimony, he conceded. He clearly, when he testified, didn't recall this search very well. The trial was three years after the search, but he acknowledged that he had been working on the investigation during his testimony and that he was present at both the Landers Lab and the SNW graffiti removal searches, which is really not all that different from what he said in his declaration, which is, I was working on this investigation. His declaration doesn't say he was part of the wiretap, and there's no evidence that he had any connection to the wiretap. So he was defendant's own witness. He had nothing of significance to say. Even if his testimony, even if the change, even if you consider the declaration a change, it was not material or prejudicial. I think your friend more or less concedes that. My question is, if his declaration had changed, would it have changed the wiretap authorization? No. It would not have changed the wiretap authorization. And I think one of the things that counsel. Why? Because he had nothing to do with the information in the wiretap. The two wiretaps were obtained by Detective, sorry, Detective Agent Zapata and had nothing to do with Detective Ahmad or the Torrance PD or this incident with the Torrance PD that occurred after the searches. The key evidence in this case culminated with the day of those searches, which was March 25th, where you had the defendant being overheard on the phone talking about controlling the Landers lab, about having to kill the straw owner. That was when the evidence in this case was kind of made. And Detective Ahmad had nothing to do in anything in the record until he showed up at the end of those searches and then later there was an incident with the Torrance PD a month after that. So that had no connection at all to the wiretaps. In addition, I think it's really a gross mischaracterization to suggest that defendant did not have the opportunity to attack these wiretaps because that's exactly what he did in his first appeal. He succeeded in persuading the court that he should be able to admit all of the evidence of the Missouri investigation and use that to attack the wiretaps. So that issue is clearly procedurally defaulted. It's not the certified issue in front of us. It's not the certified issue. And it was already completely litigated and lost. This court, in its mem dispo, in the direct appeal, directly decided the issue that there was no material false statements or omissions in the wiretap affidavits. Is this issue that's certified procedurally defaulted? Yes, I think it is procedurally defaulted because in a Brady case there's an overlap between the prejudice element of procedural default. Here's my problem with that. They didn't know about this subsequent declaration at the time they filed at trial, right? Yes. Couldn't have. The new trial motion, the rambling new trial motion filed by the pro se defendant doesn't mention this declaration, does it? There was a new, I'm not sure. Yeah, there is a new trial motion. There was a new trial motion by this defendant in which he did not know, he absolutely did not know of the declaration. Yes, he knew of the declaration. But he did claim that Ahmaud had perjured himself. Right. And he did that based on Agent Sider's testimony. I understand. I understand. So they finally discover the declaration and they file a 2255. Why don't we address that 2255 on its merits as opposed to saying what you should have done on it? If you've come up on appeal and argued to me that you discovered something after the trial that the district court never saw and never had the ability to consider the importance of, I would say we can't take that up on appeal. Bring it back to the district judge and file a 2255. Didn't they do exactly the right thing here? I'm not suggesting that a meritorious Brady claim could not be heard under these circumstances. Well, you're suggesting that they brought it before we might have rejected it out of hand. Well, no. No. What I'm suggesting is if you look at Strickler and Gentry. I've looked at those cases. They say that basically the two end up conflating. What they say is to establish prejudice sufficient to relieve the default, you have to prove Brady materiality. Right, but is there any case that you can cite that says if you have what you consider to be newly discovered evidence that you discover after the notice of appeal is filed, you must raise that claim in your direct appeal or you procedurally default it? I do not have one that says you must. We do have the one cited in the brief that certainly says you can. If you're dumb enough to and we look at it. In this case. No, let me finish. Let me finish. If you're dumb enough to and raise it and we can look at it and say it couldn't possibly have been material, we'll reject it out of hand. But that doesn't mean that in order to exhaust the claim, you must raise it on direct appeal. That's your claim here. Your claim here is that in order to exhaust it, even though you didn't know about it at the time you filed your direct appeal, you must raise it on direct appeal. Yes. No. That's the fact of this case, isn't it? No. I think the claim we're making, well, there are two claims. First, with respect to default, we're saying the defendant could have raised the claim that Ahmad was part of the team on direct appeal based on Agent Sider's testimony. He filed a new trial motion on that basis. Okay. And he could have. Now he says I could have or I didn't or I lost it on appeal or whatever. I gave up on it because it wasn't very good. I later discovered this smoking gun. It turns out it's not a smoking gun, but that's the merits. I later discovered this smoking gun, and now I want to bring it to the Court's attention because if I only had had it at the time I filed my appeal or was tried, I would have won. And we address that under merits, don't we? We don't say you should have brought up the smoking gun on direct appeal. In effect, you do because you would say the cause aspect was met, but the prejudice aspect, there's a prejudice requirement in procedural default, and that is not met for the same reason that there's no merit to the Brady claim. But that's what we review in the 2255. See, we can't find that the prejudice requirement for procedural default wasn't met in the direct appeal, so that's why we're here on the 2255, and that's why we're addressing the merits. Well, I guess I would go back to my main point. Oh, you should. Which I started with, which is the simplest way of dealing with this case is to do as the Court did in zoonoir say and look at this evidence and say it's not material. There's no way this defendant, the outcome of this trial, would have been changed based on the defendant impeaching his own witness, who is a peripheral witness at best. Thank you very much. And I would say a non-meaningless witness. Thank you. I'll give you one minute. Again, Your Honors, in the interest of transparency, this issue with Ahmaud, which turned out to be related to Officer Nazir, who was the person who made the arrest of the co-defendant on that. Officer Nazir submitted a false probable cause statement to the state court, which resulted in the charges being dismissed. There was a kerfuffle. He was dismissed from his job as a law enforcement officer and filed a suit. And that suit revealed that it's a pattern and practice of the entire Torrance Police Department to misrepresent and to withhold facts regarding informants. Can I tie that specifically to the government's other conduct here? No, I cannot. It's either a tipping point for you all or it's not. But I would suggest that my client is serving life in prison for a drug offense, and he never had a fair hearing in district court to challenge the evidence that overwhelmed him at trial, the wiretap evidence. I'm fully aware of the consequences of your client. I want to thank you for your efforts on his behalf. Thank you. Again, thank you for your CJA representation. Thank you, Mr. Woodhead, and thank you. I'm sorry. Thank you, Mr. Lemon, and thank you, Ms. Woodhead, for your oral argument presentations here today. The case of United States v. Kim Walker is submitted.
judges: Murguia, Hurwitz, Zouhary